IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| USAIRWAYS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ELLIOTT EQUIPMENT CO., | : | NO. 06-1481 |
| GLOBAL GROUND SUPPORT, LLC., | : | |
| FLUIDICS, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| BAKER & ASSOCIATES, INC. | : | |

O'NEILL, J.                                                                                            SEPTEMBER 29, 2008

MEMORANDUM

On April 7, 2006, US Airways, Inc. filed a complaint in this Court against Elliott Equipment Company, Inc., Global Ground Support, LLC, and Fluidics, Inc. for damages resulting from an accident involving one of US Airways' airbuses and deicing equipment. This action was consolidated with Global Ground Support, LLC v. Glazer Enterprises, Inc. t/a Elliott Equip. Co., No. 05-4373 (E.D. Pa. Jan. 23, 2006). In its complaint US Airways included claims for negligence, strict liability, breach of express warranty, and breach of implied warranty against Elliott, Global and Fluidics. US Airways also included a count for strict liability - manufacturing defect against Elliott and Global. US Airways' final count is a claim for breach of contract asserted against Global. The operator of the de-icing machine suffered personal injuries as a result of the accident. Plaintiff filed a complaint against several defendants, including Fluidics.

Before me now is a motion for summary judgment from defendant Fluidics, responses from plaintiff US Airways, defendant Elliott and third party defendant Baker & Associates, and a reply from Fluidics.

BACKGROUND

During 2001, various entities, including Global and Elliott, Fluidics and Baker, and Fluidics and the City of Philadelphia entered into contracts for the installation of twelve boom assemblies and associated deicing equipment at the Philadelphia International Airport. On January 23, 2001, Global entered into a purchase order agreement with Elliott to purchase fixed base pedestals and boom assemblies which could extend towards various aircraft during deicing activities. Under the contract, Elliott agreed to design and manufacture the pedestals and boom assemblies according to specifications provided by the airport and applicable industry standards. Baker provided engineering services for the overall de-icing boom project pursuant to a written contract with Fluidics. The general contractor of this project, Fluidics, Inc., purchased the deicing equipment from Global, and in turn, the City of Philadelphia purchased the equipment from Fluidics. Fluidics installed the pedestals and boom assemblies and they were operational as of December 2002. The City of Philadelphia accepted the equipment in April 2003, and US Airways was responsible for operating the deicing facility.

On February 28, 2005, Robert Emerson, an employee at US Airways, allegedly fell to the ground and sustained personal injuries when one of the boom assemblies collapsed as he was operating one of deicing units on a US Airways Airbus 330. Specifically, the boom sustained a structural failure and collapsed, causing the enclosed cab, containing Emerson, to fall to the ground. Following this incident, the City of Philadelphia and the airport required the deicing equipment to be recertified and, where necessary, repaired. Emerson commenced an action against Global and other entities, including Elliott, alleging that these entities were responsible for his injuries. Additionally, when the boom collapsed, it allegedly fell onto the aircraft causing

approximately three million dollars worth of damage to the aircraft. US Airways commenced an action against Global and others for this damage.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255. Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v.

Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).  Conflicting expert reports create a genuine issue of material fact which precludes summary judgment.  I.B.E.W. Local Union 380 Pension Fund v. Buck Consultants, 2008 WL 269476, at *6 (E.D. Pa. Jan. 30, 2008), citing Hill v. Lamanna, 2007 WL 777007, at *12 (W.D. Pa. Mar. 12, 2007).

## DISCUSSION

Fluidics asserts US Airways cannot hold it responsible for damages sustained as a result of a deicing boom failure and collapse.  Fluidics claims it is not responsible for the equipment failure under a claim of negligence, strict liability, or breach of implied or express warranty because it was merely an installer and a general contractor and so not a manufacturer, designer, or seller as required under those causes of action.  Fluidics argues US Airways' negligence claims fail because Fluidics was not involved in the design or manufacture that allegedly caused the accident so US Airways cannot prove that it had a duty.   Fluidics also argues that the strict liability, breach of express warranty and breach of implied warranty claims apply only to a seller of a product and that US Airways' claims on these theories are precluded because Fluidics was not a seller.  US Airways, Elliott and Baker claim Fluidics was involved in the design and manufacturing of the equipment and in the stream of commerce through its sale of the equipment to the City of Philadelphia, making Fluidics liable under negligence, strict liability and breach of express and implied warranty theories.

1.  Negligence

To succeed on a claim of negligence, a plaintiff must prove four essential elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal link between the breach of that duty and resulting injuries and (4) actual damages.  Swift v. Northeastern Hosp., 690 A.2d 719, 722-23 (Pa. Super. Ct. 1997).  "At a minimum, a defendant must be found to owe a duty of care before it can be held responsible for a failure to exercise that duty reasonably." Sacks v. Thomas Jefferson Univ. Hosp., 684 F. Supp. 858, 859 (E.D. Pa. 1988) (citations omitted).  "[I]n order for liability to be imposed upon the actor, he must specifically have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully."  Blewitt v. Man Roland, Inc., 168 F.Supp. 2d 466, 469-70 (E.D. Pa. 2001), citing Restatement (Second) of Torts, § 324A.  Section 324A of the Restatement (Second) of Torts states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Fluidics claims US Airways' negligence claim fails because it was merely an installer and not involved in the alleged design or manufacture errors that allegedly caused the accident to establish the duty.  Although Fluidics supports its allegations with deposition testimony from Jay Saleh (Project Manager of Global), James Glazer (President of Elliott), and other parties to the

initial contracts, evidence to the contrary exists.  US Airways provides evidence that Fluidics did in fact assume the duties of design, fabrication, inspection and testing of the welds, as shown in, for example, Fluidics' contracts with Baker and Global and most clearly through the Fluidics/City of Philadelphia invoice documents.  Additionally, Fluidics claims no party to the litigation has presented evidence of Fluidics' duty or that its breach of the duty caused the accident.  Elliott cites depositions, such as that of Jeff Wenner, and expert reports, including that of Jim Wiethorn, that assert that Fluidics could have discovered the failures in the welds through its post-installation onsite testing.  Baker also argues that Fluidics called itself a designer/builder under the Baker/Fluidics contract, evidencing an intent to serve as a designer and a builder on the project.  As these conflicting experts create a genuine issue of material fact as to whether Fluidics was merely an installer, the nature of its role as a general contractor or whether it had broader responsibilities as a designer or manufacturer, I will deny the motion for summary judgment. I.B.E.W., 2008 WL 269476, at *6.

     Fluidics also challenges its ability to be held liable under vicarious liability theory. Fluidics claims that as a general contractor it was not liable for the negligence of its subcontractors.  Fluidics argues that vicarious liability does not exist for a general contractor unless it negligently hired incompetent contractors or the nature of the work creates a peculiar risk of harm, citing e.g., Hader v. Coplay Cemenr Mfg. Co., 189 A.2d 271 (Pa. 1963).  Fluidics claims that it did not hire independent subcontractors, but that subcontractors Global and Baker asked Fluidics to bid for the project with the City of Philadelphia.  It further contends that no peculiar risk attached to the project at hand, so Fluidics cannot be held negligent under vicarious liability.  US Airways argues that the cases applying the Hader standard do not apply to this case

because they involve worker safety not products liability for allegedly defective equipment. The Hader line of cases cite Restatements (Second) of Torts § 416 and 427 which involve only "physical harm to others" not property damage, and in my view they do not apply to the facts at hand. US Airways argues that, regardless of the traditional or untraditional nature of the general contractor relationship here, Fluidics was indeed the general contractor and thus bound by the liabilities and responsibilities appurtenant under its contracts. Issues of fact preclude summary judgment.

2.  Strict Liability 402A

Strict products liability does not extend to mere installers of defective products. Malloy v. Doty Container, 820 F. Supp. 217, 222 (E.D. Pa. 1993). Restatement (Second) of Torts Section 402A states that:

> (1) One who sells any product in a defective condition unreasonably dangerous to the seller or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> > (a) the seller is engaged in the business of selling such a product, and
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Pennsylvania adopted this provision in Webb v. Zern, 220 A.2d 853 (1966). Comment f to Section 402A further explains that the section "applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor . . . . It is not necessary that the seller be engaged solely in the business of selling such products." See also Malloy v. Doty Conveyor, 820 F. Supp. 217, 220 (E.D. Pa. 1993), quoting Burch v. Sears, Roebuck & Co., 467 A.2d 615, 621 (Pa. Super.

7

1983) ("seller" includes "all suppliers of a defective product in the chain of distribution, whether retailers, partmakers, assemblers, owners, sellers, lessors or any other relevant category"). In Doty held that when only installation services are supplied there is no strict liability, but when there is a hybrid product/services transaction strict product liability will apply. Id. at 221.

Fluidics claims that it is not a seller of the equipment so there can be no claim against it for strict liability. US Airways, Elliott and Baker argue that evidence, including evidence the City of Philadelphia paid Fluidics for the equipment delivery, establishes that Fluidics was part of the stream of commerce and is thus liable under strict liability. US Airways also notes Fluidics' employee depositions serve as evidence that it was in charge of overseeing manufacturing safety which creates a services transaction. As these conflicting experts create a genuine issue of material fact as to whether Fluidics was a mere installer or was the seller of the equipment, I will deny Fluidics' motion for summary judgment. I.B.E.W., 2008 WL 269476, at *6.

Fluidics argues strict liability should not be extended to them under policy considerations. The Pennsylvania Supreme Court set forth four factors to consider when determining whether strict liability should be extended to a particular party. Francioni v. Gibsonia Truck Corp., 372 A.2d 736, 739-40 (Pa. 1977). These factors are: (1) whether the defendant is the only member of the marketing chain available to the injured plaintiff; (2) whether the imposition of strict liability would serve as an incentive to safety; (3) whether the defendant is in a better position than the consumer to prevent the circulation of defective products and (4) whether the defendant can distribute the cost of compensating for injuries resulting from defective products by charging for it in the business. Id. 372 A.2d at 739. While whether Fluidics is even a member of the

marketing chain is in dispute, imposing strict liability here would serve as an incentive to safety because Fluidics appears to be involved in these types of contracts on a regular basis and is in a better position than a consumer to prevent circulation of defective products.  Fluidics can also distribute the costs for injuries by charging more for it in the business as it is the general contractor and can bargain for the price for its services.  Therefore, policy considerations support, rather than restrict, extending strict liability to Fluidics.

3. Breach of Express and Implied Warranty

The laws of breach of express and implied warranty apply only to sellers, as cited in 13 Pa. Cons. Stat. § 2318:

> The warranty of a seller whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.  A seller may not exclude or limit the operation of this section.

See also Blewitt v. Man Roland, Inc. 168 F. Supp. 2d 466, 469 (E.D. Pa. 2001).  US Airways' causes of action for express warranty and implied warranty of merchantability require essentially the same elements as its claim for strict liability, specifically, that the party be a seller of the equipment at issue.  Saccomandi v. Delta Airlines, Inc., 2008 WL 3919365, *4 (E.D. Pa. 2008), citing Gumbs v. International Harvester, Inc., 718 F.2d 88, 95 (3d Cir. 1983).

The issue in this claim mirrors that of strict liability:  Fluidics claims that it is not a seller of the equipment and US Airways, Elliott and Baker contend evidence establishes Fluidics was a seller.  As previously noted, these conflicting experts create a genuine issue of material fact as to whether Fluidics was a mere installer or was the seller of the equipment, I will deny the motion for summary judgment.  I.B.E.W., 2008 WL 269476, at *6.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| USAIRWAYS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ELLIOTT EQUIPMENT CO., | : | NO. 06-1481 |
| GLOBAL GROUND SUPPORT, LLC., | : | |
| FLUIDICS, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| BAKER & ASSOCIATES, INC. | : | |

ORDER

AND NOW, this 29th day of September, upon consideration of defendant Fluidics' motion for summary judgment, responses of plaintiff US Airways, defendant Elliott and third party defendant Bakers and Fluidics' reply, and for the reasons set forth in the accompanying memorandum, it is ORDERED that Fluidics' motion for summary judgment is DENIED.

/s/ THOMAS N. O'NEILL, JR.
THOMAS N. O'NEILL, JR., J.