IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

US AIRWAYS, INC.                          :           CIVIL ACTION
                                          :
          v.                              :
                                          :
                                          :           NO. 06-1481
ELLIOTT EQUIPMENT CO., INC.,              :
GLOBAL GROUND SUPPORT, LLC.,              :
FLUIDICS, INC.                            :
                                          :
          v.                              :
                                          :
BAKER & ASSOCIATES, INC.                  :


O'NEILL, J.                                          SEPTEMBER 29, 2008

## MEMORANDUM

On April 7, 2006, US Airways, Inc. filed a complaint in this Court against Elliott

Equipment Company, Inc., Global Ground Support, LLC, and Fluidics, Inc. for damages

resulting from an accident involving one of US Airways' airbuses and deicing equipment. This

action was consolidated with Global Ground Support, LLC v. Glazer Enterprises, Inc. t/a Elliott

Equip. Co., No. 05-4373 (E.D. Pa. Jan. 23, 2006). In its complaint US Airways included claims

for negligence, strict liability, breach of express warranty, and breach of implied warranty against

Elliott, Global, and Fluidics. US Airways also included a count for strict liability for a

manufacturing defect against Elliott and Global. US Airways' final count is a claim for breach of

contract asserted against Global.

Before me now is a motion for summary judgment from defendant Elliott, and responses

from plaintiff US Airways and third party defendant Baker & Associates.

BACKGROUND

In January 2001, various entities, including Global and Elliott, Fluidics and Baker, and Fluidics and the City of Philadelphia entered into contracts for the installation of twelve boom assemblies and associated deicing equipment at the Philadelphia International Airport. On January 23, 2001, Global entered into a purchase order agreement with Elliott to purchase fixed base pedestals and boom assemblies which could extend towards various aircraft during deicing activities. Under the contract, Elliott agreed to design and manufacture the pedestals and boom assemblies according to specifications provided by the airport and applicable industry standards. On September 1, 2001, Fluidics entered into a teaming agreement with Global and Baker to serve as general contractor for the project. Baker provided engineering services for the overall de-icing boom project pursuant to a written contract with Fluidics. The general contractor of this project, Fluidics, purchased the deicing equipment from Global, and in turn, the City of Philadelphia purchased the equipment from Fluidics. Fluidics installed the pedestals and boom assemblies and they were operational as of December 2002. The City of Philadelphia accepted the equipment in April 2003, and US Airways was responsible for operating the deicing facility.

On February 28, 2005, Robert Emerson, an employee at US Airways, allegedly fell to the ground and sustained personal injuries when one of the boom assemblies collapsed as he was operating one of deicing units on a US Airways Airbus 330. Specifically, the boom sustained a structural failure and collapsed, causing the enclosed cab, containing Emerson, to fall to the ground. Following this incident, the City of Philadelphia and the airport required the deicing equipment to be recertified and, where necessary, repaired. Emerson commenced an action against Global and other entities, including Elliott, alleging that these entities were responsible

2

for his injuries.  Additionally, when the boom collapsed, it allegedly fell onto the aircraft causing approximately three million dollars worth of damage to the aircraft.  US Airways commenced this action against Elliott and others for this damage.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23.  If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255.  Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by

3

relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972). Conflicting expert reports create a genuine issue of material fact which precludes summary judgment.  I.B.E.W. Local Union 380 Pension Fund v. Buck Consultants, 2008 WL 269476, at *6 (E.D. Pa. Jan. 30, 2008), citing Hill v. Lamanna, 2007 WL 777007, at *12 (W.D. Pa. Mar. 12, 2007).

## DISCUSSION

Elliott asserts US Airways cannot hold it responsible for damages sustained as a result of a deicing boom failure and collapse.  Elliott claims a conflict exists with regard to the choice of law applied in this case and contends North Carolina law should apply.  Elliott also challenges US Airways' claims of negligence, strict liability, breach of express warranty and breach of implied warranty.  Additionally, Elliott alleges US Airways may not recover lost profits solely by presenting evidence of lost revenues.

I.    Choice of Laws

Before I address the issues in this case, I must decide which state's law applies to US Airways' various claims.  Elliott argues North Carolina law should apply and US Airways argues Pennsylvania law should apply.  Where, as here, federal jurisdiction is based on diversity of citizenship, I must apply the choice of law rules of the forum state, here Pennsylvania.  St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 n.3 (3d Cir. 1991) citing Klaxon Co. v.

4

Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  "Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as depecage."  Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006); Taylor v. Mooney Aircraft Corp., 265 Fed. Appx. 87, 91 n.4 (3d Cir. 2008), recognizing prediction that a Pennsylvania court would apply different state laws in the same case because Griffith v. United Airlines, Inc., 203 A.2d 79, 805 (Pa. 1964) suggests each issue must receive a separate choice of law analysis.

Pennsylvania's choice of law analysis requires that I determine whether a false conflict exists, and if no false conflict exists that I must determine which state has the greater interest in the application of its law.  LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996), citing Cipolla v. Shaposka, 267 A.2d 854, 855-56 (Pa. 1970).  A false conflict exists where the application of either state's law renders the same result, Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp.2d 589, 594 (E.D. Pa. 1999), or where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law," LeJeune, 85 F.3d at 1071.  A false conflict also exists "where the accident is fortuitous and the state where the accident occurred has no interest in the regulatory standard at issue.  LeJeune, 85 F.3d at 1071.  "The site of an accident is fortuitous when the state has no interest in or relationship to the parties or the accident except that the accident occurred within its borders."  Williams v. Terex-Telelect, Inc., 2003 WL 22431920, at *1 (E.D. Pa. May 19, 2003).  The common example of a case where the site of the accident is purely fortuitous is an airplane crash.  See Griffith v. United Airlines, Inc., 203 A.2d 79, 805-07 (Pa. 1964), Shields v. Consol. Rail Corp., 810 F.2d 397, 401 (3d Cir. 1987).  However, an accident is not fortuitous if a party

intentionally and voluntarily enters a state. Williams, 2003 WL 22431920, at *1. When an accident is not fortuitous, the place of injury assumes much greater importance and in some instances may be determinative. Shields, 810 F.2d at 401.

The determination of which state has a greater interest in having its law applied is made by applying the law of the state with the most significant contacts or relationships with the particular issue. Garcia v. Plaza Oldsmobile LTD, 421 F.3d 216, 220 (3d Cir. 2005). This assessment considers the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, the protection of justified expectations, the basic policies underlying the particular field of law, certainty, predictability and uniformity of result and ease in the determination and application of the law to be applied. Bearden v. Wyeth, 482 F. Supp.2d 614, 619 (E.D. Pa. 2006), citing Restatement (Second) of Conflict of Laws § 6(2). In assessing a state's significant contacts the "Second Restatement dictates different approaches depending on the substantive law at issue." Berg Chilling Sys., 435 F.3d at 463. Therefore, the particular issues before me must be characterized as one of tort, contract, corporate law or some hybrid.

A.    Choice of Law for Contract Issues

A conflict of law question exists with regard to which state's law applies to US Airways' express warranty contract issues. US Airways is attempting to extend the protections in the express warranty in the contract between Elliott and Global to itself. This contract included a

choice of law provision for North Carolina law[1] and Elliott is attempting to enforce this provision

against US Airways, a non-party to the agreement.  Under Pennsylvania's choice of law analysis,

"Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of

law provisions executed by them."  Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir.

1994) citing Smith v. Commonwealth Nat'l Bank, 557 A.2d 775, 777 (Pa. Super. Ct. 1989).  The

choice of law provision stands "unless: (a) the chosen state has no substantial relationship to the

parties or the transaction and there is no other reasonable basis for the parties' choice, or (b)

application of the law of the chosen state would be contrary to a fundamental policy of a state

which has a materially greater interest than the chosen state in the determination of the particular

issue and which, under the rule of § 188, would be the state of the applicable law in the absence

of an effective choice of law by the parties."  Berg Chilling Sys., 435 F.3d at 463-64, citing

Restatement (Second) of Conflicts of Law § 187(2).  Choice of law provisions are enforceable

only against non-parties that are "closely related to the contractual relationship or that should

have foreseen governance by the clause."  In re Mushroom Transp. Co., Inc. v. Burtch, et al., 247

B.R. 395 (E.D. Pa. Apr. 11, 2000).  Because US Airways contends the express warranty extends

to it and Elliott contends the disclaimer provision applies to US Airways, neither party disputes

that US Airways was closely related to the contractual relationship of Elliott and Global.[2]  Thus,

the choice of law provision is enforceable against US Airways.

---

[1] Global and Elliott agreed in the Purchase Order Terms and Conditions to have the agreement "governed and interpreted in accordance with the laws of the state of North Carolina, irrespective of the place of execution hereof or the location at which any work or services hereunder are performed."

[2] Because the parties have not disputed or briefed this issue, I make no determination at this time as to whether US Airways was a third-party beneficiary to the Global/Elliott contract.

B.    Choice of Law for Tort Issues

A conflict of law question also exists with regard to US Airways strict liability and breach of warranty product liability claims. The parties do not dispute that a true conflict exists for these tort issues. The differences between Pennsylvania and North Carolina products liability law are significant. For US Airways' product liability breach of implied warranty claim, Pennsylvania recognizes a tort claim for implied warranty of merchantability and fitness for a purpose under the Restatement (Second) of Torts §402A. North Carolina law states that "a breach of implied warranty . . . sounds in contract and not in tort." Holland v. Edgerton, 355 S.E.2d 514, 518 (N.C. App.1987), see also Phillips v. Restaurant Management of Carolina, L.P., 552 S.E.2d 686 (N.C. App. 2001), review denied, 560 S.E.2d 132 (N.C. 2002); Gregory v. Atrium Door and Window Co., 415 S.E.2d 574 (N.C. 1992), noting that the nature of a claim for breach of an implied warranty of merchantability is contractual. As US Airways has not submitted a claim for implied warranty in contract, only in tort, it would not have a valid cause of action under North Carolina law. Applying Pennsylvania law would permit a claim for implied warranty of merchantability and fitness for a particular purpose under the Restatement (Second) of Torts §402A. For US Airways' strict liability claim, Pennsylvania recognizes strict products liability to protect its citizens from defective products and to encourage manufacturers to produce safe products. LeJeune, 85 F.3d at 1071. North Carolina courts have not adopted the doctrine of strict liability in products liability actions. Fowler v. Gen. Elec. Co., 252 S.E.2d 862, 845 (N.C. Ct. App. 1979). Thus, which state's law applies determines whether US Airways can pursue a strict liability claim. Applying each state's law to the same set of facts produces a different result and each state's interests would be impaired if its law were not applied.

8

The relevant contacts to consider in the greater interest assessment of a tort issue, enumerated in Restatement (Second) of Conflict of Laws § 145(2)(a)-(d), include the place of injury, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship between the parties is centered. Taylor v. Mooney Aircraft Corp., 265 Fed. Appx. 87, 91 n.4 (3d Cir. 2008). These contacts must be weighed on a qualitative rather than quantitative scale. Id.

Here, North Carolina's sole contact with the accident is a contract between Global and Elliott which selects North Carolina law in a choice of law provision. This contract has no relation to US Airways' tort claims against Elliott. Because the contract containing the choice of law provision does not apply to US Airways' tort claims, North Carolina has no interest in applying its laws to this action. Additionally, Elliott is not a resident of North Carolina so North Carolina's interest in protecting a resident defendant from strict liability is not implicated.

Although not alleged by the parties to be governing law, the parties' states of domicile do not have a greater interest in the case. Elliott is domiciled in Nebraska.[3] US Airways is a Delaware corporation with its principal place of business in Arizona; however it conducts a great deal of service in Pennsylvania and was engaged in its service during the accident.

Pennsylvania's contacts are more substantial. Pennsylvania is the location of the accident. It is also the location of the permanently installed deicing facility which contains the

---

[3] It appears no argument exists for the application of Nebraska law because Nebraska recognizes strict liability. See Shipler v. GMC, 710 N.W.2d 807, 826 (Neb. 2006). Applying Nebraska law seems a better argument then North Carolina's law because Elliott's equipment was manufactured in Nebraska but it still does not have a greater interest in this action than Pennsylvania.

allegedly defective equipment at issue. Even though the allegedly defective product was manufactured in Nebraska, the deicing facility for which it was manufactured and in which it was installed is in Pennsylvania. Elliott knew its equipment was to be delivered to and used in Pennsylvania. US Airways was responsible for operating the deicing facility in Pennsylvania. Furthermore, no contract creates a relationship between US Airways and Elliott; the relationship is purely centered upon their simultaneous involvement with the deicing facility in Pennsylvania. Pennsylvania has an interest in determining liability for an accident that occurred among parties involved with the deicing facility within its jurisdiction. Moreover, the accident's occurrence in Pennsylvania was not fortuitous and therefore the forum state assumes much greater importance. Shields, 810 F.2d at 401. This situation is dissimilar to that of an airplane crash where the only contact with the accident is that it occurred within Pennsylvania; here, the allegedly defective equipment was permanently installed in Pennsylvania so that the accident could not have occurred anywhere but Pennsylvania. Additionally, the parties intentionally and voluntarily entered Pennsylvania. The above contacts establish Pennsylvania has the greater interest in having its law applied in this case.[4]

---

[4] Elliott appears to support this determination of Pennsylvania's choice of law analysis in its response to Baker's motion for summary judgment against it in the Global case, stating:

> Baker correctly points out that it never agreed to be subject to North Carolina law, accordingly under the choice of law principals of Griffith v. United Airlines, Inc., 203 A.2d 79, 805 (Pa. 1964), as the tort occurred in Pennsylvania, and Pennsylvania has the greatest interest in determining the liabilities of joint tortfeasors for acts within its jurisdiction with respect to the relationship between Baker and Elliott, to the extent there is any conflict of laws between North Carolina and Pennsylvania, Pennsylvania law should apply for purposes of determining Baker's motion.

Baker and US Airways are similarly situated as neither were parties to the Global/Elliott contract at issue. However, Elliott wants the choice of law provision in the contract to extend to US

Elliott alleges North Carolina law should apply because I previously found it applied to Global's claims against Elliott.  However, my January 23, 2006 decision to apply North Carolina law relied on Global and Elliott's agreement to have its contract governed and interpreted under the laws of the state of North Carolina.  Global Ground Support, LLC v. Glazer Enterprises, Inc. t/a Elliott Equip. Co., No. 05-4373 (E.D. Pa. Jan. 23, 2006) citing Krutits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994), holding Pennsylvania courts generally enforce choice of law provisions.  US Airways and Elliott have no contract or contractual provision designating the choice of law to make a similar finding and extend the application of North Carolina's law to US Airways' tort claims.

Elliott also argues Pennsylvania has no interest in providing greater protection to US Airways with strict liability than it would receive in the state in which it chose to incorporate, and US Airways should not be surprised to have laws similar to its chosen domicile used against it.  Elliott provides no reasoning these allegations should be considered in a choice of law analysis.

Elliott also states I should not allow the possibility of inconsistent verdicts to arise from the same facts because North Carolina's law will apply to the claims in the Global case.  As discussed above, Pennsylvania's choice of law analysis allows different states' laws to apply to different issues in a single case.  Taylor, 265 Fed. Appx. at 91.  Thus, Elliott's argument does not preclude different states' laws from applying to Global and US Airways' claims when their cases have been consolidated.

---

Airways' torts claims despite having acknowledged that these provisions did not extend to Baker under similar circumstances.

II.     Breach of Express Warranty

Elliott argues that the express warranty contained in the contract between Elliott and

Global provided a twelve-month limitations period[5] which bars US Airways' recovery.  US

Airways claims this court already determined this limitation period to be ambiguous in its

January 23, 2006 opinion in Global's case against Elliott.  US Airways further alleges that the

five-year warranty[6] in the contract between Elliott and Global extends to US Airways and

---

[5]  Alleged Twelve-Month Warranty:

7.1     [Elliott] warrants that each Item, parts thereof, spare parts and repaired or
        replacement parts manufactured or modified to [Elliott's] detailed design and
        specifications, be free from defects in material, workmanship, process of
        manufacture and design and be suitable for the intended purpose. [Elliott] shall
        not be liable for defects or failure caused by [Global's] misuse, negligence or
        failure resulting from noncompliance with [Elliott's] operating, maintenance and
        overhaul manuals. [Elliott] does not warrant any components, which have been
        specified or supplied by [Global].

7.2     [Elliott] agrees that its warranty, with respect to defects in material, workmanship,
        process of manufacture and design shall extend as outlined and will be warranted
        for a period of no less than twelve months.

                *               *               *

7.10    Any replacement made by reason of this warranty will be likewise warranted.
        This warranty and all other warranties, guarantees and/or service policies entered
        into between [Global] and [Elliott] will run to [Global], its successors, assigns,
        agents, equipment pool partners and other airport/agencies to whom [Global] may
        sell [Elliott's] products.

[6]  Five-Year Warranty:

Elliott Equipment Company hereby warrants all equipment manufactured by Elliott
Equipment Company to be free from defects in material and workmanship at the time of
shipment from the Elliott Equipment Company plant.  Elliott Equipment will replace at
its plant, any equipment which shall, within TWELVE (12) MONTHS after delivery to
the original customer from Elliott Equipment Company, be returned to Elliott Equipment
Company's plant and be found by Elliott Equipment Company to have been defective at
the time of original shipment from Elliott Equipment Company.  There are no express or

12

therefore that Elliott is potentially liable to US Airways for breach of the express warranty.

A.    Express Warranty Limitation Period

As discussed above, I find that the contract US Airways alleges applies contains a forum

selection clause choosing North Carolina law so I will interpret the express warranty under North

Carolina law.  In my January 23, 2006 opinion on Elliott's first motion for summary judgment

for the claims alleged against it by Global, I held that the warranty language at issue in the

Purchase Order Terms and Conditions is ambiguous because the language "no more than 12

months" merely sets a minimum time period for the warranty.  Therefore, I found genuine issues

of material fact concerning the length of the warranty Elliott provided for its goods; whether

Global was an Elliott-approved distributor under the alleged five-year warranty and whether the

five-year warranty applies to the allegedly defective parts of the deicing equipment.

I incorporate herein the analysis and discussion of this issue in my opinion of this date in

Elliott's second motion for summary judgment in Global's case and of my decision of January

23, 2006 in Elliott's first motion for summary judgment and find that the warranty language's

---

implied warranties, including the warranty of merchantability and fitness for a particular
purpose, covering component parts or accessories manufactured or modifications made
by someone other than Elliott Equipment Company.  Such warranties as may be furnished
to Elliott Equipment Company by the manufacturer of such times will be extended to the
buyer by Elliott Equipment Company.  The following structural components have a FIVE
(5) YEAR parts only warranty after date of shipment from Elliott Equipment Company:
Subframe, turret and Structural Components of all steel booms.

*               *               *

DISCLAIMER: THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES,
EXPRESS OR IMPLIED INCLUDING WITHOUT LIMITATION ANY IMPLIED
WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR
PURPOSE, AND IS ALSO IN LIEU OF AN OTHER OBLIGATIONS ON THE PART
OF ELLIOTT EQUIPMENT COMPANY."

13

ambiguity remains and that a genuine issue of material fact remains with regard to the terms of the statute of limitations in this warranty. As discussed above, neither party disputes that the alleged twelve-month warranty extends to US Airways.[7] I will therefore deny Elliott's motion for summary judgment on US Airways' breach of express warranty claim.

B.   The Alleged Disclaimer in the Alleged Twelve-Month Express Warranty as Applied to the Implied Warranty Claims

US Airways alleges Elliott breached the implied warranties of merchantability and fitness for a particular purpose. US Airways asserts its breach of implied warranty claims in tort under the Restatement (Second) of Torts §402A Comment M. Elliott responds that US Airways' breach of implied warranty claims are excluded under the UCC by a disclaimer. Elliott argues that the express warranty includes a disclaimer specifically incorporating and addressing the implied warranties of fitness for a particular purpose and merchantability, and limiting the time for recovery under these theories to twelve months. Elliott also argues that my January 23, 2006 opinion that Global's breach of implied warranty claim is precluded by the five-year warranty's disclaimer should apply. Because the claim of breach of express warranty is governed by North Carolina law, the question of whether the disclaimer applies to the implied warranties of merchantability and fitness also is governed by North Carolina law.

The UCC as adopted by North Carolina provides that "[u]nless excluded or modified (G.S. 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1)

---

[7] Because the parties have not disputed or briefed this issue, I make no determination as to whether US Airways was a third-party beneficiary to the Global/Elliott contract.

(1986). Further, the code provides that the implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. . . ." N.C. Gen. Stat. § 25-2-315 (1986). A disclaimer of liability serves to limit liability by reducing instances where a seller may be in breach, while a limitation or modification is a restriction on available remedies in the event of a breach.

To exclude the implied warranty of fitness for a particular purpose, the writing must be conspicuous. N.C. Gen. Stat. § 25-2-316(2) (1986). "Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'" Id. To exclude the warranty of merchantability, a disclaimer provision must be stated in express terms, mention 'merchantability' in order to disclaim the implied warranty of merchantability, and be conspicuously displayed. N.C. Gen. Stat. § 25-2-316(2) (1986), see also Bullner v. General Motors Corp., 54 F.R.D. 479 (E.D. N.C. 1971). G.S. 25-1-201(10) defines 'conspicuousness' as that which is 'so written that a reasonable person against whom it is to operate ought to have notice of it.' Determination of conspicuousness is a question of law for the court. Billings v. Joseph Harris Co., 220 S.E.2d 361 (N.C. App. 1975), aff'd, 226 S.E.2d 321 (N.C. 1976).

Elliott argues that provisions 7.1 and 7.2 of the alleged twelve-month warranty provide the limitation on implied warranties. These provisions state:

> 7.1    [Elliott] warrants that each Item, parts thereof, spare parts and repaired or replacement parts manufactured or modified to [Elliott's] detailed design and specifications, be free from defects in material, workmanship, process of manufacture and design and be suitable for the intended purpose. [Elliott] shall

not be liable for defects or failure caused by [Global's] misuse, negligence or failure resulting from noncompliance with [Elliott's] operating, maintenance and overhaul manuals. [Elliott] does not warrant any components, which have been specified or supplied by [Global].

7.2     [Elliott] agrees that its warranty, with respect to defects in material, workmanship, process of manufacture and design shall extend as outlined and will be warranted for a period of no less than twelve months.

However, the language of the alleged disclaimer in the alleged twelve-month warranty does not meet the requirement of conspicuousness and does not use the required language. Neither 7.1 nor 7.2 specifies "merchantability" nor is there even a clear disclaimer of all implied warranties. Additionally, the language of the alleged disclaimer was not conspicuous, as these provisions are in the same size print as the remainder of the document and in regular type in the middle of a long agreement. Indeed, it would be difficult to conclude that Elliott intended these sections to serve as a disclaimer of implied warranties. US Airways does not address whether a reasonable person should have noticed the alleged implied warranty disclaimer. However, I find the alleged exclusions are insufficiently conspicuous to support a conclusion that a reasonable person should have noticed the warranty disclaimer.

Elliott's argument based upon my January 23, 2006 decision with regard to Global's implied warranty claim ignores the fact that the disclaimer in that decision was based upon the five-year warranty. Elliott has not asserted that the five-year warranty's disclaimer applies in the US Airways case; instead it focuses on its alleged disclaimer in sections 7.1 and 7.2 of the alleged twelve-month warranty. If the ambiguity in the alleged twelve-month contract results in a five-year warranty as both US Airways and Global assert, then I will incorporate the discussion and analysis from my January 23, 2006 decision. However, my January 23, 2006 opinion does

16

not address the disclaimer's application to a third party.  Thus, the five-year warranty's

disclaimer precludes US Airways' breach of implied warranty claim only if the disclaimers are

found to apply to that claim.

US Airways argues that the five-year warranty applies to its breach of express warranty

claim but that the disclaimer found within it does not apply to US Airways' breach of implied

warranty claim which it bases upon the Restatement (Second) of Torts §402A, comment M.[8]   US

---

[8]        *m. "Warranty."*   The liability stated in this Section does not rest upon
negligence.  It is strict liability. . . . The basis of liability is purely one of tort.

A number of courts, seeking a theoretical basis for the liability, have resorted to a
"warranty," either running with the goods sold, by analogy to covenants running
with the land, or made directly to the consumer without contract.  In some
instances this theory has proved to be an unfortunate one.  Although warranty was
in its origin a matter of tort liability, and it is generally agreed that a tort action
will still lie for its breach, it has become so identified in practice with a contract of
sale between the plaintiff and the defendant that the warranty theory has become
something of an obstacle to the recognition of the strict liability where there is no
such contract.  There is nothing in this Section which would prevent any court
from treating the rule stated as a matter of "warranty" to the user or consumer.
But if this is done, it should be recognized and understood that the "warranty" is a
very different kind of warranty from those usually found in the sale of goods, and
that it is not subject to the various contract rules which have grown up to surround
such sales.

The rule stated in this Section does not require any reliance on the part of the
consumer upon the reputation, skill, or judgment of the seller who is to be held
liable, nor any representation or undertaking on the part of that seller.  The seller
is strictly liable although, as is frequently the case, the consumer does not even
know who he is at the time of consumption.  The rule stated in this Section is not
governed by the provisions of the Uniform Sales Act, or those of the Uniform
Commercial Code, as to warranties; and it is not affected by limitations on the
scope and content of warranties, or by limitation to "buyer" and "seller" in those
statutes.  Nor is the consumer required to give notice to the seller of his injury
within a reasonable time after it occurs, as is provided by the Uniform Act.  The
consumer's cause of action does not depend upon the validity of his contract with
the person from whom he acquires the product, and it is not affected by any

Airways alleges the disclaimer does not apply because US Airway's implied warranty claim is based on its status as an intended user and operator of the deicing machine which is a claim brought in tort and not as a party to a contract, which would be governed by the UCC. The Court of Appeals held in Keystone Aeronautics Corp. v. Enstrom Corp., 499 F.2d 146, 149 (3d Cir. 1974) that Pennsylvania law permits a freely negotiated and clearly expressed waiver of §402A between business entities of relatively equal bargaining strength. It further found that §402A, comment M was focused on "protecting the average consumer by prohibiting blanket immunizations of a manufacturer or seller through the use of standardized disclaimers." Id. "[W]hile sound public policy would prohibit disclaimer of the benefits of §402A in the 'garden variety' consumer situation, the same result need not follow where the sale was a pure commercial transaction between two knowledgeable corporations which have consciously negotiated terms and price, and only property damage is at issue." Id. at 146. US Airways is not an average consumer in this case; it did not purchase a faulty product from a store and become injured. In fact, it argues that it is an intended user of the equipment and thus beneficiary of a contract between Elliott and Global, two knowledgeable corporations which have consciously negotiated terms and price, and only property damage, to its airplane and the deicing machines, is at issue. In trying to enforce the express contract, US Airways argues that "Elliott knew or should have known that US Airways was the intended user of the deicer and beneficiary of its

disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, "warranty" must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort.

18

contract with Global."[9]  As discussed above, neither Elliott or US Airways dispute that the

alleged twelve-month warranty extends to US Airways.  Because US Airways is also a

corporation and contends it was a known user at the time this contract was negotiated, it is not

the average consumer in need of the public policy protections afforded by §402A comment M.  I

therefore find that if the ambiguity in the alleged twelve-month warranty is resolved to provide a

five-year warranty, and said warranty extends to US Airways as an intended beneficiary, then, as

I found in my January 23, 2006 opinion, the disclaimer in the five-year warranty will apply to the

claims for breach of implied warranty.

III.    Restatement (Second) of Torts 402A:  Strict Liability and Implied Warranties

Restatement (Second) of Torts §402A's standards apply to breach of warranty as well as

to strict liability claims, Simeone ex rel. Estate Of Albert Francis Simeone, Jr. v. Bombardier-

Rotax GmbH, 360 F.Supp.2d 665, 680 (E.D. Pa. 2005), citing Kridler v. Ford Motor Co., 422

F.2d 1182, 1184 (3d Cir.1970).[10]  US Airways bases its claim of breach of implied warranty

upon Restatement (Second) of Torts §402A, comment M, which states in relevant part:

---

[9] While US Airways cites Scarpitti v. Weborg, 609 A.2d 147, 150-151 (Pa 1992) as the
law governing whether a corporation is a third party beneficiary of a contract, I make no finding
at this time as to whether US Airways fulfills the requirements.

[10] In considering these contentions, both courts and commentators have addressed the
question and concluded that the elements of the strict liability and warranty theories are
essentially the same.  Saccomandi v. Delta Ailrlines, Inc., 2008 WL 3919365, *4 (E.D. Pa.
2008), citing Gumbs v. International Harvesters, Inc., 718 F.2d 88, 95 (3d Cir. 1983).  See also L.
Frumer & M. Friedman, 2 Products Liability § 16A[4][f][i] (1983) ("[I]t is fairly clear that if it is
shown that the product was not fit for the ordinary purpose for which it was manufactured, it
would also be defective for purposes of a strict liability in tort action"); J. White & R. Summers,
Handbook of the Law Under the Uniform Commercial Code § 9-7, at 355 (2d ed. 1980)
(Merchantability and the unreasonably dangerous standard are "nearly synonymous").

. . . There is nothing in this Section which would prevent any court from treating the rule stated as a matter of "warranty" to the user or consumer. But if this is done, it should be recognized and understood that the "warranty" is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales. . . . The rule stated in this section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; . . . In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated merely as one of strict liability in tort.

Indeed, the issues argued in strict liability and implied warranty claims mirror one another. In each, Elliott alleges that even if Pennsylvania law provides a viable strict liability claim and the disclaimer does not preclude a claim for breach of implied warranty, US Airways' strict liability and implied warranty claims are precluded because US Airways fails to produce evidence to support the elements of those claims, namely that there was a defect at the time of delivery and that US Airways' employees and Global changed and misused Elliott's equipment. Pennsylvania law provides that a manufacturer or seller will be held "strictly liable if a defect in its product causes injuries to a user. A product is defective if it is unsafe for its intended use." Restatement (Second) of Torts Section 402A, which has been adopted by Pennsylvania, states that:

> (1) One who sells any product in a defective condition unreasonably dangerous to the seller or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a) the seller is engaged in the business of selling such a product, and
>>
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>>
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

20

To prevail under a strict liability theory, US Airways must prove (1) the product was defective, (2) the defect existed when it left the hands of the Elliott and (3) the defect caused the harm. Bryd v. Essex Silverline Corp., 2008 WL 81887, at *6-7 (E.D. Pa. Jan. 8, 2008). No strict liability exists for non-intended uses even if foreseeable. Pa Dep't of Gen. Serv. v. U.S. Mineral Prod. Co., 898 A.2d 590, 600 (Pa. 2006). Additionally, Elliott is not strictly liable if subsequent changes are made to the equipment after it left Elliott's hands unless Elliott could have reasonably expected or foreseen such an alteration of its product. Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997).[11]

Elliott alleges that US Airways provides no evidence that the product was defective, that the defect existed when it left the hands of Elliott and that the defect caused the harm, and that US Airways misused and modified the equipment after delivery. Although expert reports exist to support Elliott's allegations, US Airways presents other expert reports, such as those of Ray Claxton and Charles M. Recard, and deposition testimony to contradict the opinions in Elliott's experts' reports. The conflicting expert reports create a genuine issue of material fact with regard to whether the goods were nonconforming. I.B.E.W., 2008 WL 269476, at *6, citing Hill v. Lamanna, 2007 WL 777007, at *12, holding conflicting expert reports create a genuine issue of material fact thereby precluding summary judgment.

---

[11] Although this case has been called into question for mixing negligence terms into the strict liability analysis, it has not been overruled. See Pa Dep't of Gen. Serv., 898 A.2d at 601 n.10 (Pa. 2006), noting the case as a limited, targeted exception; see also Phillips v. Cricket Lighters, 841 A.2d 1000, 1007 (Pa. 2003), noting negligence concepts have no place in strict liability law but explicitly not reversing strict liability decisions which utilize negligence terms.

IV.   Negligence

US Airways alleges a negligence claim against Elliott if North Carolina law applies. Because I will find Pennsylvania law applies to US Airways' tort claims, US Airways may not proceed on its negligence claim.

V.   Lost Revenues

Elliott alleges US Airways is claiming loss of revenue instead of lost profits, which it alleges is not the proper measure of damages in this case. Specifically, Elliott alleges the only evidence US Airways offers for its lost profits is lost revenue.

"Lost profits are recoverable in an action for the destruction or interruption of an established business, whenever they are not merely speculative or conjectural." Rea v. Ford Motor Co., 560 F.2d 554, 557 (3d Cir. 1977). Whether and what amount of lost profits are recoverable is a question for the jury. Bolus v. United Penn Bank, 528 A.2d 1215, 1226 (Pa. Super. Ct. 1987). US Airways need not prove its damages with mathematical certainty; it need only provide the jury with a reasonable amount of information to estimate damages fairly without engaging in speculation. Id. The evidence permissible to establish lost profits includes "(1) . . . (2) evidence of past profits in an established business [to allow] a reasonable basis for estimating future profits[,] (3) [p]rofits made by others or by a similar contract, where the facts were not greatly different [] afford a reasonable inference of the plaintiff's loss[,] (4) [t]he evidence of experts if based on anything more than individual opinion or conjecture . . . ." Id. Gross receipts do not show net earnings or earning power. Rodgers v. Yellow Cab Co., 147 A.2d 611, 619 (Pa. 1959). Lost profits are calculated by determining the lost revenues and subtracting avoided

expenses.  Miller v. Katz, 1996 WL 187561, at *3 (E.D. Pa. Apr. 17, 1996); Phila. Television

Network, Inc. v. Reading Broad., Inc., 2005 WL 1668346, at *33 (Phila. Ct. Com. Pl. July 14,

2005).

      Elliott alleges US Airways has only presented evidence of lost revenue and US Airways

must be ordered to offer more than evidence of lost revenue to support its claim for lost profits.

US Airways responds that it will not attempt to collect damages for lost gross receipts and that

the expert report of Adeel Makhdumi support its calculation of lost profits.  Adeel Makhdumi's

report uses the term "lost revenue" and not "lost profit."  Lost revenue alone is insufficient

evidence of lost profits; however, the report includes consideration of costs, including that

"revenue is reduced by 11.1% to reflect passenger variable costs including: Distribution,

Reservations, Food, Interrupted Trips, Direct Marketing, Passenger Insurance, and Other Station

Passenger Variable Costs."  Therefore I will deny Elliott's claim that US Airways is relying

solely on lost revenue.

      An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| USAIRWAYS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ELLIOTT EQUIPMENT CO., INC., | : | NO. 06-1481 |
| GLOBAL GROUND SUPPORT,  LLC., | : | |
| FLUIDICS, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| BAKER & ASSOCIATES, INC. | : | |

ORDER

AND NOW, this 29 day of September 2008, upon consideration of defendant Elliott's

motion for summary judgment, and the responses of plaintiff US Airways and third party

defendant Baker, and for the reasons set forth in the accompanying memorandum, it is

ORDERED that Elliott's motion for summary judgment is DENIED.

THOMAS N. O'NEILL, JR., J.